A94A0297. GIBBY v. THE STATE.
(443 SE2d 852)

POPE, Chief Judge.

Defendant was convicted by a jury of child molestation (two counts), statutory rape, rape, incest, criminal attempt to commit aggravated sodomy, and aggravated child molestation. He appeals from the judgment entered on his conviction and the denial of his motion for new trial.

Laurie Littlejohn, the chief juvenile investigator for the Spalding County Sheriff's Department, testified that defendant's 12-year-old daughter told her that defendant had tried to force her to engage in oral sex with him and that when she refused, he had sexual intercourse with her. Officer Littlejohn also stated that defendant's ten-year-old daughter told her that defendant had asked her to massage him in an improper manner. Anne Hester, a caseworker with the Department of Family & Children Services (DFACS), testified that the older daughter told her that she had, at her father's request, given him improper massages under the covers in his bed; that defendant had tried to get her to perform oral sex on him; and that he had engaged in sexual intercourse with her. Hester further stated that the younger daughter said she gave defendant massages under the covers

as well. Dr. David Hermecz, a clinical psychologist, said the older girl told him she had sexual intercourse with her father and that there had been earlier inappropriate contact. Hester and Dr. Hermecz both testified that the older girl said she told her mother about defendant's behavior, and that her mother told her to pray about it and not tell anyone. Hester's testimony to this effect was elicited without objection; Dr. Hermecz's testimony regarding what the mother said was allowed over defendant's objection that it was double hearsay. Defendant's daughters were available at trial but were not called as witnesses. The girls were not taken to a doctor until several weeks after these incidents occurred, and the medical examination was inconclusive.

1. The evidence, viewed in a light to support the verdict, was sufficient to enable rational jurors to find defendant guilty on all counts beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The testimony of Littlejohn, Hester, and Dr. Hermecz was allowed pursuant to OCGA § 24-3-16, the Child Hearsay Statute, which provides that "[a] statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability." Defendant challenges the admission of this testimony on several grounds.

(a) Defendant first argues that the Child Hearsay Statute is unconstitutional because it violates the federal Sixth Amendment. We have already rejected this argument. See *McLelland v. State*, 203 Ga. App. 93 (2) (416 SE2d 340) (1992). Moreover, the Supreme Court's transfer of the case to this court mandates the conclusion that defendant's constitutional challenge to the Child Hearsay Statute on Sixth Amendment grounds is without merit.[1] See *McCann v. State*, 167 Ga. App. 368 (1) (306 SE2d 681) (1983). *Rolader v. State*, 202 Ga. App. 134 (413 SE2d 752) (1991), cited by defendant in support of his argument, is not binding precedent. See Court of Appeals Rule 35 (b).

(b) Defendant also contends the trial court should not have allowed the State's witnesses Hester and Dr. Hermecz to testify that the older victim said that when she told her mother what defendant was doing, the mother said to pray and not tell anyone. Even if the witnesses could testify about the victim's statements regarding her

---

[1] Defendant originally filed this appeal with the Georgia Supreme Court, which transferred the case to the Court of Appeals without comment.

abuse under the Child Hearsay Statute, he asserts, testimony about what the mother said to the victim was impermissible "double hearsay." We first note that defendant did not object when Hester testified about the mother's words. Thus, when Dr. Hermecz gave the same testimony, it was merely cumulative and any error in overruling defendant's objection would have been harmless. See *Green v. State*, 206 Ga. App. 42 (2) (424 SE2d 646) (1992). But more importantly, we want to emphasize that testimony about what the mother said to the victim *was not hearsay* (beyond permissible hearsay under the Child Hearsay Statute) *because it was not offered to show the truth of matters asserted therein.* Indeed, the mother's response to her daughter was not an assertion but a request, and the testimony concerning her response was presented not to prove that prayer and silence on the subject of defendant's conduct were desirable, but simply to show that the mother's request for prayer and silence was made. See *Doughty v. State*, 175 Ga. App. 317 (1) (333 SE2d 402) (1985); Agnor's Georgia Evidence, § 11-1 (3d ed. 1993).

(c) Defendant's argument that the witnesses' testimony regarding what the girls said defendant told them to do was impermissible "double hearsay" is also without merit, as defendant's directions to the girls about what he wanted them to do were an integral part of his offenses and were thus admissible as part of the res gestae. See OCGA § 24-3-3. Moreover, the testimony about defendant's statements to the girls was not hearsay because it was offered not to prove the truth of any matter asserted therein, but instead to show that the statements were made. See *Doughty*, 175 Ga. App. at 317-318.

(d) Citing *Shaver v. State*, 199 Ga. App. 428 (405 SE2d 281) (1991) and *Hunnicutt v. State*, 194 Ga. App. 714 (391 SE2d 790) (1990), defendant contends the trial court erred in allowing evidence under the Child Hearsay Statute without first determining that the child victims were competent to testify under OCGA § 24-9-5. However, unlike the offenses in *Shaver* and *Hunnicutt*, the offenses in this case occurred after the effective date of an amendment to OCGA § 24-9-5 which changed that Code section to provide that child victims are now competent to testify regardless of their ability to understand the nature of an oath. For offenses which involve child victims occurring after the effective date of the amendment (April 19, 1989), a determination that the child victim is competent to testify is not necessary; a child witness is "available" for purposes of the Child Hearsay Statute as long as the child is physically available to appear at trial. See OCGA § 24-9-5 (b); see *Bright v. State*, 197 Ga. App. 784 (4) (400 SE2d 18) (1990). As the victims were available in this case, the trial court did not err in failing to determine the victims' competency prior to allowing the hearsay testimony.

(e) At oral argument and in a supplemental brief, defendant ar-

gued that the trial court erred in admitting evidence of what the victims said under the Child Hearsay Statute without a prior ruling that the circumstances of the victims' statements provided sufficient indicia of reliability. This specific ground for challenging the testimony was not enumerated as error or argued in defendant's initial brief, and appellants cannot expand the scope of their enumerations of error at oral argument. See *City of College Park v. Ga. Power Co.*, 188 Ga. App. 223 (372 SE2d 493) (1988). In any case, a prior finding that there are sufficient indicia of reliability is not required, and the trial court's admission of testimony under the statute will not be reversed as long as the record contains sufficient evidence of indicia of reliability. See *Gregg v. State*, 201 Ga. App. 238 (3a) (411 SE2d 65) (1991). The record in this case shows that the two girls, who were twelve and ten years old, were interviewed separately on at least two different occasions, and that their statements were consistent with each other and over time. Moreover, the State's witnesses were all professionals trained in interviewing victims of child abuse without asking leading questions, and all three considered the girls credible. See *Gregg*, 201 Ga. App. 240 (3b) (listing factors considered in determining reliability, including age of victims, consistency of their statements, spontaneity of their statements, and general credibility).

3. On the first day of the trial, defendant subpoenaed the voluminous records of DFACS relating to his case.[2] Because this material was confidential, the trial court had to conduct an in camera review of all the material to determine what, if anything, should be divulged. See OCGA § 49-5-41 (a) (2). And because there was so much material, the court had to take a day off from the trial to conduct its review.

Defendant enumerates as error the explanation the trial court gave the jury for the delay. However, the trial court simply told the jury the truth: that a request for confidential information had been made and that the court had to go through the material to decide what, if anything, should be divulged. The court did not say who made the request and did not imply in any way that the defendant had done anything wrong. Thus, the trial court's comments were not improper and did not deprive defendant of a fair trial.

4. Defendant argues that the trial court erred in determining after its in camera review that none of the DFACS material should be divulged, and further erred in refusing to seal the material and include it in the record for appellate review. Defendant has failed to show that any of the withheld information was material and exculpa-

---

[2] We note that the proper procedure would have been to petition the trial court to subpoena the material for in camera inspection. See *Davidson v. State*, 183 Ga. App. 557 (4b) (359 SE2d 372) (1987).

tory; his general assertion that something in the volumes of material would have cast doubt on the reliability of the victims' statements is not enough. See *Davidson v. State*, 183 Ga. App. 557 (4b) (359 SE2d 372) (1987). Upon motion by defendant, the material examined in camera should have been sealed and filed or inventoried to allow appellate review. See *Wilson v. State*, 246 Ga. 62, 65 (1) (268 SE2d 895) (1980). However, the court's failure to seal or inventory the files was harmless because we will not examine sealed materials to determine whether exculpatory information was withheld without a showing that there is at least a strong possibility that they contain material and favorable evidence, see *Williams v. State*, 251 Ga. 749, 788-789 (312 SE2d 40) (1983); *Byrd v. State*, 171 Ga. App. 344 (3) (319 SE2d 460) (1984), and defendant failed to make such a showing in this case.

5. The prosecutor's remark in closing argument that in child molestation cases the only witnesses are the victims was not improper.

6. Lastly, defendant contends that the trial court erred in its charge on good character. Citing *Booth v. State*, 186 Ga. App. 342 (2) (367 SE2d 77) (1988), he argues that the charge in this case failed to instruct the jury that good character evidence alone may be sufficient to acquit. In *Booth*, we held that an instruction that the jury could acquit " 'upon a reasonable doubt *and* proof of good character' " was erroneous. This language was not used in this case. Instead, the trial court properly instructed the jury that "good character is a positive, substantive fact, and may be sufficient to produce in the minds of a jury a reasonable doubt about the guilt of a defendant." Accordingly, this contention is also without merit.

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

DECIDED APRIL 1, 1994 —
RECONSIDERATION DENIED APRIL 18, 1994 — ▮▮▮▮▮▮▮▮▮▮

*Jason R. Hasty, L. Chandler Vreeland*, for appellant.
*Johnnie L. Caldwell, Jr., District Attorney, Daniel A. Hiatt, Assistant District Attorney*, for appellee.