**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**September 18, 2013**

# In the Court of Appeals of Georgia

A13A1274. LOCKHART v. THE STATE.

PHIPPS, Chief Judge.

Dorina Lockhart was convicted of committing the following offenses against her husband's nephews: (i) child molestation against D. G., by touching the child's penis with her vagina;[1] and (ii) statutory rape against that child's brother, T. G.[2] On appeal, Lockhart challenges the sufficiency of the evidence. We affirm.

When an appellant challenges the sufficiency of the evidence to support the conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

---

[1] OCGA § 16-6-4.

[2] OCGA § 16-6-3.

essential elements of the crime beyond a reasonable doubt."[3] So viewed, the evidence at the jury trial showed the following.

D. G., the subject of the child molestation charge, was 14 years old at the time of the trial. He recounted that his relationship with Lockhart changed when she began sending him Facebook messages. In one, she had asked him whether he liked her "more than an auntie"; in latter ones, she had added sexual content – asking, for example, about the size of his penis and whether it was big enough for her. Eventually, D. G. had two separate incidents of sexual contact with Lockhart. He testified that the first encounter occurred in a room at his grandparents' house; Lockhart removed her clothing, pulled down his shorts and boxers, and "grinded" on him by rubbing her vagina against his exposed penis. D. G. testified that the second encounter had occurred in Lockhart's vehicle; after she parked it one night in the driveway of his residence, Lockhart performed oral sex on him.

T. G., the subject of the statutory rape charge, was 15 years old at the time of the trial. He recounted that he, too, had intimate communications with Lockhart using Facebook, and had two separate instances of sexual contact with Lockhart. The first

---

[3] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LEd2d 560) (1979) (emphasis in original).

encounter, T. G. testified, occurred one afternoon in Lockhart's car after she parked it in a desolate location; Lockhart performed oral sex on him and they engaged in sexual intercourse. The second encounter, T. G. testified, occurred one evening at Lockhart's home; they engaged in sexual intercourse.

D. G.'s and T. G's mother testified that, when she overheard a conversation between T. G. and another of her sons, she began suspecting inappropriate contact between Lockhart (who was her brother's wife) and D. G. Subsequently, after T. G. used his mother's cell phone to access Facebook without logging out, she used her cell phone to read what she discerned were Facebook exchanges between not only D. G. and Lockart, but also between T. G. and Lockart. After discussing with D. G. and T. G. what she had read, she reported the matter to police.

During an ensuing investigation, Lockhart submitted to an interview on May 20, 2011 by a deputy sheriff. After waiving her Miranda rights, Lockhart admitted to having "inappropriate" Facebook exchanges with D. G. and with T. G., and admitted that she had engaged in sexual intercourse with T. G., but denied having had any sexual contact with D. G. She revealed that, during the time in question,[4] she was 22

---

[4] The indictment alleged that the child molestation was committed between January 1, 2011 and January 31, 2011, and that the statutory rape was committed between February 1, 2011 and February 28, 2011.

years old. The jury was presented an audio-video recording of Lockhart's interview. Lockhart elected not to testify, nor call any witnesses.

On appeal, Lockhart claims that certain of the state's witnesses were not credible and that the state's case contained additional weaknesses and inconsistences. But "we do not . . . judge the credibility of witnesses, a job that rests squarely with the jury."[5] Moreover,

> any evidentiary weaknesses, conflicts, or inconsistencies were for the jury to resolve. We do not speculate which evidence the jury chose to believe or disbelieve. Where as here, there was sufficient evidence, even though contradicted, to support each fact necessary to make out the state's case, we must uphold the jury's verdict.[6]

*Judgment affirmed. Ellington, P. J., and Branch, J., concur.*

---

[5] *Hammontree v. State*, 283 Ga. App. 736, 737 (1) (642 SE2d 412) (2007) (citations omitted).

[6] *Dix v. State*, 307 Ga. App. 684, 686 (1) (705 SE2d 903) (2011) (footnote and punctuation omitted). At the time of Lockhart's trial in 2012, OCGA § 24-4-8 provided that "[t]he testimony of a single witness is generally sufficient to establish a fact"; OCGA § 16-6-3 (a) provided that "no conviction shall be had for [statutory rape] on the unsupported testimony of the victim." See *Williamson v. State*, 315 Ga. App. 421, 423-424 (1) (b) (727 SE2d 211) (2012) (quantum of corroboration needed in a statutory rape case is not that which is in itself sufficient to convict the accused, but only that amount of independent evidence which tends to prove that the incident occurred as alleged; slight circumstances may be sufficient corroboration, and ultimately the question of corroboration is one for the jury); *Hammontree*, supra (victim's testimony alone may suffice to establish the elements of child molestation).